UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

_____
                                        )
SANTOS RODRIGUEZ and                    )
AMANDA OCHOA,                           )
                                        )
            Plaintiffs,                 )
                                        )
v.                                      )   Civil Action No. 11-10838
                                        )
AMERICA'S SERVICING COMPANY             )
                                        )
            Defendant.                  )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF AMERICA'S SERVICING COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)**

Defendant, America's Servicing Company, a division of Wells Fargo Bank, N.A. ("ASC"), improperly identified in Plaintiffs' Complaint, submits this memorandum of law in support of its motion to dismiss Plaintiffs' Complaint under rule 12(b)(6) for failure to state a claim upon which relief may be granted.

While it is unclear from the sprawling Complaint what legal claims Plaintiffs assert (because they do not delineate any actual claims), at a minimum, they claim in conclusory fashion that ASC violated the federal government's Home Affordable Modification Program (HAMP) by failing to provide a mortgage modification. That, however, is where Plaintiff's factual allegations end. They simply do not allege sufficient facts to demonstrate a plausible entitlement to relief making this case a prime candidate for dismissal under Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) and its progeny. Regardless, the overwhelming majority of courts in Massachusetts and throughout the country have held that HAMP does not create a private right of action. Likewise, Plaintiff cannot attempt an end-run on HAMP by claiming that not following HAMP's guidelines violates G.L. c. 93A.

1

While Plaintiffs do not assert any actual numbered claims or specific counts, they mix in amongst their HAMP allegations various hot button phrases like "presumptively unfair loan under Fremont," "assignment issues under Ibanez," and predatory loan under G.L. 183C. Compl. ¶¶ 9, 29, 30. Plaintiffs, however, do not provide sufficient (and in some cases, any) factual allegations to support passing references. Instead, Plaintiffs attempt to capitalize upon the mere mention of these cases without demonstrating how or why they apply. In some instances, Plaintiffs' own allegations reveal that the claims are legally unsustainable. In others instances, Plaintiffs have not plead facts demonstrating a plausible entitlement to relief. For each of these reasons, which are set forth in more detail herein, this Court should dismiss Plaintiffs' Complaint.

## FACTS

As they must, ASC accepts Plaintiffs' well-pleaded facts as true for the purposes of this motion only. While outside the scope of this motion, ASC asks this Court to note that not only does ASC deny Plaintiffs' allegations in their entirety, but Plaintiffs fail to even mention that they were previously considered for, and denied, a HAMP modification on multiple occasions over the last two years while they have resided in the property without making any mortgage payments. These material facts deserved mention in the factually-sparse Complaint especially since it was Plaintiffs' counsel that handled those modification efforts. See Complaint, ¶ 12 ("Compl. ¶ 12").

Plaintiffs own, and reside in, real property located at 56 A Highland Avenue, Everett, MA (the "Property"). Compl. ¶4. On June 2, 2006, Plaintiffs obtained a mortgage loan in the principal amount of $368,000 secured by a mortgage on the Property. Compl. ¶5, 6. While

not alleged in the Complaint, ASC is the current servicer of the mortgage.[1] The loan holder is not alleged or named. The loan is an adjustable rate loan with an initial interest rate of 7.75%. Compl. Ex. C, ¶4. After two years, the interest rate adjusts to 4.25% plus an index set at the 6-month LIBOR. Compl. Ex. C, ¶4. Plaintiffs failed to make monthly mortgage payments and defaulted on their mortgage at least as far back as November 2009. Compl. ¶7, 12. Plaintiffs claim to have applied for a HAMP modification and submitted all requested materials, but they do not allege what documents were submitted, when they were submitted, or how they were submitted. Compl. ¶28. They make no other allegations regarding their application attempts or ASC's consideration of their submission other than that ASC did not give them a HAMP modification. They do not even allege that they qualified for a modification. Finally, Plaintiff's allege that they sent a 93A demand letter to ASC demanding a stay of their foreclosure. Compl. ¶13. They neglect to allege that ASC had already continued the foreclosure for two years.

## ARGUMENT & AUTHORITIES

This court should dismiss Plaintiffs' Complaint for failure to state a claim because Plaintiffs have failed to plead facts sufficient to show a plausible entitlement to relief. Regardless, even if sufficiently plead, Plaintiffs' Complaint still fails as a matter of law because there is no private right of action under HAMP. Similarly, Plaintiffs' passing references to other theories are inadequately plead and fail as a matter of law.

---

[1] While Plaintiffs allege that they "entered into a loan agreement with the Defendant," (Compl. ¶5) that fact is simply wrong and lacks any factual basis. The inaccuracy is evidence by a copy of the promissory note, which shows that the loan was originated by Accredited Home Lenders, Inc. Plaintiffs' Complaint suffers from many inaccuracies and omissions.

## I. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THEY FAIL TO PLEAD FACTS SUFFICIENT TO DEMONSTRATE A PLAUSIBLE ENTITLEMENT TO RELIEF.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a Complaint that fails to state a claim upon which relief can be granted. The United States Supreme Court clarified and, in effect, heightened Rule 8 pleading requirements when it expressly rejected the oft-cited "no set of facts" language of Conley v. Gibson, 355 U.S. 41 (1957). See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007) ("The [no set of facts] phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard"). In Ashcroft v. Iqbal, the Supreme Court confirmed that the Twombly pleading standard applied to all civil actions. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (U.S. 2009). Now, in order to survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Id. at 1949. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1955 (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 1955 (internal citations omitted).

In this case, Plaintiffs' allegations fall woefully short. Other than alleging that they submitted information to ASC for a modification and they did not get a HAMP modification, Plaintiffs do not allege any actual facts. Plaintiffs do not allege when they applied for a modification; how many times they applied for a modification; what materials they provides to the ASC; what ASC's response was; whether their application was approved or denied; when it

4

was approved or denied; why the application was approved or denied, and whether they were qualified for, and were entitled to, a HAMP modification. Indeed, stripped of its conclusory allegations, there is simply nothing to Plaintiffs' complaint other than that they did not get a modification and that they are facing foreclosure because they did not pay their mortgage. Plaintiffs simply have not done enough under <u>Iqbal</u> and <u>Twombly</u> survive dismissal. Their complaint should also be dismissed because it fails as a matter of law because HAMP does not provide a private right of action.

## II. HAMP DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION.

### A. HAMP Background

HAMP is neither statutory nor regulatory. It is a program created by the United States Treasury in response to, and in conjunction with, the Emergency Economic Stabilization Act of 2008 (the "Act"). <u>See</u> 12 U.S.C. § 5219.[2] The Act grants authority to the Secretary of Treasury to acquire troubled assets such as mortgages and mortgage backed securities and to implement a plan to "maximize assistance for homeowners." The Act further provides how the Secretary "may" assist homeowners through loan modification.[3] The Act does not address the

---

[2] Section 5219 provides:

   (a) Residential mortgage loan servicing standards.

   (1) To the extent that the Secretary acquires mortgages, mortgage backed securities, and other assets secured by residential real estate, including multifamily housing, the Secretary shall implement a plan that seeks to maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages, considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program under section 257 of the National Housing Act [12 USCS § 1715z-23] or other available programs to minimize foreclosures. In addition, the Secretary may use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures.

[3] Section 5220 provides:

   (1) In general. To the extent that the Federal property manager holds, owns, or controls mortgages, mortgage backed securities, and other assets secured by residential real estate,

5

Secretary's authority with respect to mortgages that he does not hold, own, or control. In addition, the Act notably does not explicitly or implicitly create any private rights of action for non-compliance.[4]

The congressional record illustrates Congress' intent and acknowledgement that the Act does not create any private right of action and that there is no private authority to enforce the Act's proposed modification program. Representative Kucinich noted:

> The central flaw of this bill is that *there are no stronger protections for homeowners and no changes in the language to ensure that the Secretary has the authority to compel mortgage servicers to modify the terms of mortgage*. And there are no stronger regulatory changes to fix the circumstances that allowed this to happen.
>
> We should have created a mechanism for our Government to take a controlling interest in mortgage-backed securities and use our power to work out a new deal for the homeowners. We could have done this. We should have done this. But we didn't …
>
> *It is not as though we had no choice but to pass the bill before us. We could have done this differently. We could have demanded language in the legislation that would have empowered the Treasury to compel mortgage servicers to rework the terms of mortgage loans so homeowners could avoid foreclosure.*

154 Cong. Rec. H 10712, 10766 (statement of Rep. Kucinich, Oct. 3, 2008) (emphasis added). Clearly, the above language shows that Congress chose <u>not</u> to include any mandates or

---

including multifamily housing, the Federal property manager shall implement a plan that seeks to maximize assistance for homeowners and use its authority to encourage the servicers of the underlying mortgages, and considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program under section 257 of the National Housing Act [12 USCS § 1715z-23] or other available programs to minimize foreclosures.

(2) Modifications. In the case of a residential mortgage loan, modifications made under paragraph (1) *may* include--
  (A) reduction in interest rates;
  (B) reduction of loan principal; and
  (C) other similar modifications…

[4] Nor does the Act create any actual obligations for private (non-government) held and serviced loans.

requirements for servicers. The entire program is voluntary and without any private enforcement mechanism from the Act.

Purportedly based on its authority derived from the Act, the United States Treasury created HAMP. See Exhibit A, HAMP Supplemental Directive 09-01, Page 1. President Obama announced the new "Homeowner Affordability and Stability Plan" on February 18, 2009 in a purported attempt to help millions restructure their mortgages. Id. The Treasury then sought to apply its newly adopted HAMP not just to those mortgages which it held, owned, or controlled as prescribed by the Act, but also to those privately owned and serviced mortgages where it had no ownership or authority. The Treasury did so by presenting a so-called "Commitment to Purchase Financial Instrument and Servicer Participation Agreement" to loan servicers. Despite its name, the Secretary did not actually purchase, hold, or control any interest in the privately owned and serviced mortgages that it sought to influence.

As an incentive to entice loan servicers such as Wells Fargo (ASC) to voluntarily enroll in the HAMP servicer participation agreement, the Treasury proposed to compensate servicers for each loan that they successfully modified. While the compensation terms are not included in the servicer participation agreement, they are set forth in the HAMP Directives. See HAMP Supplemental Directive 09-01 (providing $1,000 for completed modifications). The servicer is not compensated for loans that it is unable to modify regardless of the reason for the unsuccessful modification, and the servicer is also not compensated if the borrower fails to complete the initial trial loan modification (even though the servicer complied with the program). Since HAMP's inception in early 2009, the Treasury has issued at least 15 supplemental directives consisting of hundreds of pages explaining the intricacies of HAMP including the net present value test, the complicated debt-to-income modification waterfall, and

stringent reporting requirements.[5] None of these directives, however, has ever suggested that any private right of action exists under the terms of the program or any supplemental directive. Nor has any directive ever required investor participation. In fact, servicers do not have to follow HAMP when their loan investor guidelines prohibit it.

### A. Courts have Repeatedly Ruled that No Private Cause of Action Exists Under HAMP.

Consistent with the legislative intent Massachusetts' courts and courts throughout the country have held that HAMP does not create a private right of action. See e.g., Kozaryn v. Ocwen Loan Servicing, LLC, Docket No. 10-11510-NMG (D. Mass. May 17, 2011) (noting consensus view that HAMP does not create private right of action); Brown v. Bank of Am. Corp., 2011 U.S. Dist. LEXIS 36235, *10-12 (D. Mass. Mar. 31, 2011) (ruling no private right of action under HAMP and HAMP does not create a cognizable duty for which a negligence claim can be brought); Durmic v. J.P. Morgan Chase Bank, NA, 2010 U.S. Dist. LEXIS 124603, *8, n.2 (D. Mass. Nov. 24, 2010) (noting "the court agrees ... that HAMP explicitly precludes any private right of action); Ording v. BAC Home Loans Servicing, LP, 2010 U.S. Dist. LEXIS 139317, *19-20 (D. Mass. Jan. 10, 2010) (ruling HAMP does not create a private right of action); Hart v. Countrywide Home Loans, Inc., 2010 WL 3272623 at 5 (E. D. Mich. Aug. 19, 2010) (entering summary judgment for defendant bank, holding HAMP does not compel modification and statute does not create private right of action); Duggar v. Bank of America/Countrywide Loans, 2010 WL 3258383 at *2 (E.D. Mo. August 16, 2010) (holding no private cause of action under HAMP, TARP, or the Emergency

---

[5] All of the Directives are available online at: https://www.hmpadmin.com/portal/programs/directives.html#3. On September 22, 2010, the former Supplemental Directives were superseded by the Making Homes Affordable Program Handbook for Servicers of Non-GSE Mortgages, available online at https://www.hmpadmin.com/portal/programs/hamp/servicer.html.

Economic Stabilization Act of 2008); Hoffman v. Bank of America, N.A., 2010 WL 2635773 at *5 (N.D. Cal. June 30, 2010) (holding no private right of action to enforce HAMP); Robinson v. Wells Fargo Bank, N.A., 2010 WL 2534192 at *7 (D. Ariz. June 18, 2010) (holding no private cause of action under TARP); Thoreau de la Salle v. America's Wholesale Lender, 2010 U.S. Dist. LEXIS 36319 (E.D. Cal. Apr. 13, 2010) ("To the extent that plaintiff is trying to predicate her due process claims on violations of the Home Affordable Modification Act (HAMP), the Troubled Asset Relief Program (TARP), or the National Housing Act ("NHA"), there is no private right of action afforded under those statutes nor do they create a protected property interest"); Aleem v. Bank of America, 2010 U.S. Dist. LEXIS 11944, *9 (C.D. Cal. Feb. 9, 2010) ("Though Plaintiffs mention the National Housing Act and the HAMP, they fail to allege any elements related to violations of these statutes, nor do they provide a basis for concluding that a private right of action exists under these statutes."); Williams v. Geithner, 2009 U.S. Dist. LEXIS 104096 (D. Minn. Nov. 9, 2009) (finding HAMP did not create a protected property interest and noting "[t]he loan modifications are not an entitlement, but are linked to decisions that result in profits to taxpayers. Congress did not intend to mandate loan modifications."); Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009) ("...but nowhere in the judicial review section is there any mention of a right of action against non-governmental entities. Thus, the Court finds that there is no express private right of action against TARP fund recipients.").

Nothing in the enabling legislation, the HAMP guidelines, or the interpreting case law establishes a private right of action under HAMP. Since no private right of action exists, Plaintiffs' complaint fails as a matter of law and should be dismissed.

### B. Likewise, Plaintiffs Cannot Rely On G.L. c. 93A to Get Around a Lack of Private Right of Action.

While Plaintiffs have not actually alleged a G.L. c. 93A claim, they reference the statute in their sprawling allegations. They appear to allege that ASC violated G.L. c. 93A by not providing a HAMP modification. There are two problems with their theory. First, courts have rejected the use of state unfair and deceptive practices (UDAP) statute as an end-run on HAMP and other regulatory regimes with no private right of action. Second, even if a 93A claims is permitted, Plaintiffs have not alleged any facts showing any unfair or deceptive conduct by ASC.

Some courts have taken the position that a stated UDAP statute cannot be used as enforcement mechanism for HAMP because HAMP has no enforcement mechanism. See Aleem v. Bank of America, N.A., 2010 U.S. Dist. LEXIS 11944 at * 9 (C. D. Cal. 2010) (rejecting attempt to use California UDAP statute to pursue HAMP violations noting "[t]he UCL cannot create a private right of action where none exists under the federal statute."); See Kenney v. GMAC Mortgage, LLC, 2011 WL1663146, *2 (Mass. Super. Ct. March 17, 2011) ("Since neither the HAMP guidelines nor the Agreement give the borrowers any right to enforce the Servicer's obligation they have no rights under State Consumer Protection Statute.").

In Massachusetts, some courts have been willing to recognize a 93A violation only when the violation of HAMP is "in and of itself" an independent, unfair or deceptive act. See Kozaryn, at 7 (requiring 93A claim to allege more than mere HAMP violation, but rather that violation was in and of itself unfair or deceptive). Something more than negligence or non-compliance with a HAMP directive is required. Id.

This Court should reject the 93A claim because Plaintiffs should not be allowed to essentially create a private right of action under HAMP, which has no private right of action at all, simply by using a state statute such as C. 93A.  To do so would be to avoid the legislative intent that there be no private right of action.  But, even if this Court considers the allegations, Plaintiffs' complaint should still fail because there is no unfair or deceptive conduct alleged.  The only allegation is that ASC did not provide a HAMP modification to Plaintiffs.  Even if this were a violation, it does not constitute an independent unfair or deceptive act.  This is especially the case were Plaintiffs do not even allege that they were qualified for a HAMP modification.  Indeed, Plaintiffs' allegations are really nothing more than a conclusory statement unsupported by any facts.  Plaintiffs have not even alleged facts to show that they were entitled to a modification, let alone facts related to what they submitted and what ASC's response and decisions were.  As such, Plaintiffs cannot satisfy their burden of showing a plausible entitlement to relief under G.L. c. 93A.

### III. PLAINTIFFS' FLEETING MENTION OF OTHER THEORIES OF RECOVERY FAIL BECAUSE THEY HAVE NOT BEEN SUFFICIENTLY PLEAD AND BECAUSE THEY FAIL AS A MATTER OF LAW.

Without any detail and without asserting any separately labeled or identified claims, Plaintiffs briefly reference other potential theories of recovery in their allegations.  In most conclusory fashion, they assert that the loan is a high cost loan under G.L. c. 183C, that the loan is presumptively unfair, and that the assignee did not receive a valid assignment of the note and mortgage.  These bare-bones, conclusory allegations are precisely the type of claims that do not survive Twombly and Iqbal scrutiny.  In fact, several of these claims have no basis whatsoever and if any prior investigation of the claims had occurred, they should not have been asserted.

### A. Plaintiffs' Loan Is Not A High Cost Home Mortgage Loan Under G.L. c. 183C.

Plaintiffs' passing and conclusory reference that their loan is a "predatory loan" under G.L. c. 183C (Compl. ¶8-9) is devoid of any factual support. Chapter 183C only applies to loans falling within the statutory definition of "high cost home mortgage." See e.g., M.G.L c. 183C, §3 (prohibiting "high-cost home mortgage loan" without certification of borrowers credit counseling); § 5 (prohibiting prepayment fees or penalties in "high cost home mortgage loans"); § 7 (prohibiting interest rate increase after default for "high cost home mortgage loans").

Chapter 183C defines only two ways that a loan may qualify as a "high cost home mortgage loans," including if the loan (1) has an interest rate that exceeds 8% (or 9% for second liens) the yield rate on U.S. Treasury securities with a comparable maturity period at the time of the loan; or (2) has "fees and points" that exceed 5% of the total loan amount. G.L. c. 183C, § 1 (defining "high cost home mortgage loan"). If a loan does not fit either definition then it is not a high cost home mortgage loan and Chapter 183C does not apply.

Here, Plaintiffs have not alleged sufficient facts to establish that the loan meets either of the definitions. Notwithstanding the complete lack of pleading, the terms of the note, which is attached to the Complaint, reveal that the loan is not a high cost home mortgage loan. Plaintiffs' loan is not a high cost home mortgage loan by virtue of the interest rate because the initial 7.75% interest rate is well below the applicable limit of 13.1% (calculated as 8% plus the U.S Treasury Rate of 5.10%.[6]). Even if the fully indexed rate for adjustable rate

---

[6] The applicable 30-year yield rate on U.S. Treasury securities was 5.105% on June 2, 2006 – the date of the loan. This data is available on the U.S. Treasury Website at: http://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yieldYear&year=2006.

12

mortgages is used since the loan is adjustable (calculated using what the adjusted rate would be on the date of the loan – here, the margin 4.250 plus the applicable LIBOR of 5.638[7], for a rate of 9.88%) it would be well below the high cost loan threshold of 13.1%. Therefore the loan is not high cost by virtue of its interest rate. Nor, have Plaintiffs alleged any facts to show that their loan is a high cost home mortgage loan by virtue of the total points and fees. Since Plaintiffs' loan is not a high cost home mortgage loan, G.L. c. 183C does not apply and the Complaint should be dismissed.

### B. The Loan Does Not Satisfy The Fremont Factors.

Plaintiffs also conclusory allege that their loan is "presumptively unfair" under G.L. c. 93A by virtue of the SJC's holding in Commonwealth v. Fremont Investment And Loan, 452 Mass. 733, 743 (2008). In Fremont, the Massachusetts Attorney General brought a consumer protection action under G. L. c. 93A against Fremont Investment & Loan, the originator of various mortgage loans. The Attorney General obtained a preliminary injunction prohibiting Fremont from foreclosing on mortgages, without first gaining Attorney General approval, on the grounds that a loan containing *all four* characteristics are presumptively (although not conclusively) unfair because a borrower could not reasonably be expected to repay the loan or obtain refinancing. Id. at 743. The SJC affirmed the Superior Court's preliminary injunction order holding that loans containing *all* of the following four characteristics are "presumptively unfair":

> (1) the loans were adjustable rate mortgages with an introductory rate period of three years or less;
>
> (2) the loans featured an introductory rate for the initial period that was at least three percent below the fully indexed rate;

---

[7] The applicable 6 month LIBOR rate in June 2006 was 5.638. This data is available online at: http://www.wsjprimerate.us/libor/libor_rates_history.htm.

>  (3) the loans were made to borrowers for whom the debt-to-income ratio would have exceeded fifty percent had Fremont measured the borrower's debt by the monthly payments that would be due at the fully indexed rate rather than under the introductory rate; and
>
>  (4) the loan-to-value ratio was one hundred percent, or the loan featured a substantial prepayment penalty (defined by the judge as greater than the "conventional prepayment penalty" defined in G.L. c. 183C, § 2) or a prepayment penalty that extended beyond the introductory rate period.

Id. at 739.

Plaintiffs have not alleged sufficient facts to show that each of the four Fremont factors are satisfied with this loan. For example, Plaintiffs have not pleaded any facts regarding their debt to income ratio and they have not pleaded facts to show the loan to value ratio. Therefore, they have not and cannot show the third and fourth elements of a 93A-based Fremont claim. In addition to their pleading omissions, what they have plead shows that the loan definitely does not satisfy the second Fremont factor because the fully indexed rate for the adjustable rate loan does not exceed the initial rate by more than 3%. The fully indexed rate is "the LIBOR at the time of the inception of the loan plus the rate add." See Commonwealth v. Fremont Investment & Loan, 23 Mass. L. Rptr. 567, *5 (Mass. Super. Ct., Feb. 26, 2008) Here, the rate add is 4.25%. The LIBOR at the time of the loan was 5.638. See supra, n.8. Added together, the fully indexed rate is 9.888%. Since the initial rate was 7.75%, the fully indexed rate of 9.888 is less than 3% higher. Therefore, the second factor is not met and the loan is not unfair as a matter of law under G.L. c. 93A and Fremont.

The 93A-based Fremont allegations also fail because they are time-barred. A 93A claim has a four year statute of limitations. See M.G.L c. 260, § 5A ("Actions arising on account of violations of any law intended for the protection of consumers, including but not limited to...chapter ninety-three A...whether for damages, penalties or other relief and brought by any

person...shall be commenced within *four years* next after the cause of action accrues." (emphasis added). In this case, Plaintiffs' claim accrued on the day they received the loan because on that day they had all the information that they needed to ascertain that the loan was allegedly unfair. See Salois v. The Dime Savings Bank of New York, FSB, 128 F.3d 20, 25 (1st Cir. 1997) (rejecting tolling of limitations period where borrowers had in their possession all documents upon which their loan claims were based). Therefore, the 93A allegations are time barred because they were filed well beyond the limitations period.

### C. Plaintiffs' Other Allegations Also Fail.

In an attempt to latch on to hot consumer finance issues, but without considering their applicability to their case, Plaintiffs reference the Supreme Judicial Court's holding in U.S. Bank National Assoc. v. Ibanez, 458 Mass. 637 (2011) to allege that Defendant lacks standing to foreclose. The issue in Ibanez was whether an assignee had established its standing to foreclose for the purpose of its post-foreclosure, quiet title action. Here, the are no allegations of any assignments, let alone how any assignments are invalid. And, Plaintiff has brought an action against the loan servicer – not the loan holder. The loan servicer is not foreclosing. The mortgage holder is the party that would foreclosure and it is not even named in this case. Therefore, Ibanez is irrelevant. Even if it were relevant, however, Plaintiff has not alleged any facts whatsoever regarding the holder of the mortgage or the assignment of the mortgage. Therefore, they have failed to state any claim under Ibanez even presuming one exists.

Finally, in passing, Plaintiffs also speculate, again without any factual support, that the defendant is not the holder of their promissory note. Even overlooking that ASC, as the servicer, is not claiming to be the holder of the note, holding the note is not a requirement for foreclosure. See Valerio v. U.S. Bank, N.A., 716 F. Supp. 2d 124 (D. Mass. 2010) (rejecting

plaintiffs' argument that defendant mortgagee is barred from foreclosing without affirmatively establishing possession of note or right to enforce note, stating "[t]he Massachusetts statute governing foreclosures is addressed to mortgagees, not note holders"); <u>Adamson v. Mortgage Electronic Registration Systems, Inc.</u>, 28 Mass. L. Rptr. 153, *4 (Mass. Super. Ct. March 23, 2011) (holding plaintiff could not show likelihood of success on merits for injunction based on claim that defendants did not hold note because Massachusetts' statute deals with mortgages, not notes). Indeed, G.L. c. 244 governs foreclosures and deals only with mortgages. It has no mention of not holders. Therefore, Plaintiffs' allegation, besides being of questionable basis, fails as a matter of law.

## CONCLUSION

For the reasons set forth herein, this Court should dismiss Plaintiffs' Complaint in its entirety.

                        Respectfully submitted,
                        America's Servicing Company, a division
                        of Wells Fargo Bank, N.A.,
                        By its Attorneys,

                        /s/ Jeffrey S. Patterson
                        Jeffrey S. Patterson (BBO #671383)
                        jeffrey.patterson@nelsonmullins.com
                        David E. Fialkow (BBO #666192)
                        david.fialkow@nelsonmullins.com
                        Nelson Mullins Riley & Scarborough LLP
                        One Post Office Square, 30th Floor
                        Boston, Massachusetts 02109
                        (617) 573-4700
                        (617) 573-4710 (fax)

Dated: May 18, 2011

## **CERTIFICATE OF SERVICE**

I, Jeffrey S. Patterson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: May 18, 2011                                         /s/ Jeffrey S. Patterson